JOHN TRAINER *vs.* MARINE NATIONAL BANK.

Sagadahoc.   Opinion December 20, 1912.

*Appropriation.   Bond.   Call Deposits.   Credibility of witness.   Change. of note.   Checks.   Discount   Handwriting.   Exceptions. Interest.   Motion.   Notes.   Overdraft.*

Action of assumpsit to recover three different items: First, $500, which plaintiff claimed to be due him as a balance of a call deposit which he made with the defendant bank December 1, 1905; second, $111.25, corrected during the trial to $101.25, as an over charge of interest on two notes discounted for him by the bank; third, $295.83, as interest on the alleged call deposit. This last item was abandoned at the trial. The verdict was for $601.25, showing that the jury found the plaintiff entitled to recover the first item of $500 and the second item as corrected of $101.25.

*Held:*

The finding of the jury in plaintiff's favor upon the issue presented to the jury, whether the plaintiff authorized the appropriation of the $500 of his deposit to the purchase of a bond for that amount of the Monson Consolidated Slate Company alleged by the defendant and denied by the plaintiff, is sustained.

The plaintiff who was in 1907 engaged in building a vessel borrowed on August 31, 1907, of defendant, $2200, and gave his note on two months therefor and November 13, 1907, he borrowed $1300 and gave a mortgage on certain vessel property to secure both notes. The first note of $2200 having been renewed October 13, 1907, for four months. In both notes was written "interest after at 7%." The plaintiff claimed that he should

have been cahrged with only 6% interest on this loan of $3500 and the item of $101.25 is the difference between 6% and 7% interest, and that the notes were altered after he signed them, and the jury so found.

*Held:*

That this finding of the jury was against the weight of the evidence.

A witness for the defendant who was Treasurer of the Monson Consolidated Slate Company from 1896 until it went into a receiver's hands in 1910, was asked this question concerning the value of the property covered by the mortgage which secured an issue of $50,000 of bonds of which issue the $500 bond in question was a part, "Could it have been sold for enough, in your opinion, even at forced sale, to have paid the bonds in full," and the exclusion of his answer is sustained.

On exceptions and motion by the defendant. Exceptions overruled. Motion sustained unless the plaintiff files a remittitur for all of the verdict over $500 within thirty days after the certificate of decision is filed.

This is an action of assumpsit to recover the following sums of money; first, $500 claimed by the plaintiff to be due him as the balance of call deposit made by him with the defendant bank on December 1, 1905; second, $111.55, which amount was corrected during the trial and reduced to $101.25, claimed by plaintiff to be an overcharge of interest on two notes discounted for him by the defendant bank. The third item of $295.83 as interest on the alleged call deposit was abandoned at the trial. Plea, the general issue with brief statement in substance that the $500 referred to in plaintiff's declaration was on the 31st day of January, 1906, paid out by said bank by authority of the plaintiff and for his benefit; that the notes referred to were written so as to carry interest at the rate of 7% until fully paid, and no higher rate was charged on them; that defendant never received any accommodation notes from the plaintiff and the two $1500 notes referred to were notes to cover actual loans made to the plaintiff. The jury returned a verdict for the plaintiff for $601.25; the defendant filed a general motion for a new trial and exceptions to the admission and exclusion of testimony.

The case is fully stated in the opinion.

*George W. Heselton,* for plaintiff.

*Arthur J. Dunton,* for defendant.

SITTING: WHITEHOUSE, C. J., SAVAGE, CORNISH, KING, HALEY, JJ.

KING, J. This is an action of assumpsit to recover three different items.

First, $500 which the plaintiff claimed to be due him as a balance of a call deposit which he made with the bank December 1, 1905; second, $111.55 as an overcharge of interest on two notes discounted for him by the bank; and, third, $295.83 as interest on the alleged call deposit.

Under the ruling of the presiding Justice, acquiesced in by the plaintiff, the third item was abandoned; and the second item was, by agreement of the plaintiff, reduced to $101.25. The verdict was for $601.25, showing that the jury found the plaintiff entitled to recover the first item of $500, and the second item, as corrected, of $101.25. The case is before the Law Court on the defendant's motion for a new trial, and also on its exceptions as to the admission and exclusion of testimony.

The Motion.

1. The $500 item. The plaintiff, a sea captain, was a customer of the defendant bank from some time prior to December, 1905, until the bank went into liquidation in 1910 or thereabouts. During the period covered by the transactions in question Horatio A. Duncan was president of the bank and his son, Silas H. Duncan, was its cashier. December 1, 1905, the plaintiff deposited in the bank $5,843.75. After charging against that deposit an overdraft of $362.97 and the balance due on two notes of the plaintiff, his balance was $4,350.86.

The plaintiff claimed that immediately after that deposit was made the cashier of the bank proposed to him that if he could allow $3,000 of his deposit to remain in the bank for some material time it would pay him, 5% interest thereon, the same rate it was then paying for borrowed money, and that he assented to that proposition, but on condition, however, that his money should be subject to call. This alleged arrangement was the basis of the third item in the plaintiff's writ, which, however, was abandoned. On the part of the bank it was claimed that no such arrangement was

made, and the evidence introduced relating to it, on the one side and on the other, became of little consequence after the third item was abandoned.

On December 8, 1905, three days after the deposit was made, an item of $2,500 was charged against the plaintiff's account, and it appears to have been represented by a "debit" slip containing the words "note purchased." It was claimed in behalf of the bank that this sum was applied, on authority of the plaintiff, to the purchase of the joint and several note, for that amount, of Silas H. Duncan, Horatio A. Duncan, and John S. Hyde, bearing 5% interest; that this note was kept in the bank with other papers of the plaintiff; and that the interest accruing thereon from time to time was credited to his account, and that finally the note was paid and the amount credited to him. The plaintiff, on the other hand, denied that he had any knowledge that such a transaction had occurred until after the bank went into liquidation, when he saw for the first time his cancelled checks and debit slips, which up to that time had been in the possession of the bank. The validity of this $2,500 note transaction was not directly involved in the issues submitted to the jury, and was material only so far as it shed any light upon those issues.

We come now to the first matter in issue, the $500 item. On January 31, 1906, the plaintiff's account was charged with an item of $500. The bank claimed the charge was made by authority of a counter check for that amount, dated December 18, 1905, payable to cash, and signed "John Trainer by S. H. D. authorized." This check was made out and signed by the cashier, Silas H. Duncan, and the bank claimed that it was given for the purchase of a $500 bond of the Monson Consolidated Slate Company, which bond was then the property of the cashier. The bond was kept in the bank, and it claimed to have credited to the plaintiff's account such of the maturing coupons thereon as were paid. The Slate Company is in the hands of a receiver, and it was not claimed that the bond was of full value, at least, at the time of trial. The First National Bank of Bath became the liquidating agent of the defendant bank and Mr. Low, vice-president of the First, testified that in searching, at

the request of Horatio A. Duncan, for pass books, cancelled checks, and other papers and vouchers relating to the plaintiff's account in the Marine Bank, among the books and papers turned over to the First by the Marine Bank, he found a tin box containing a pass book in which were some cancelled checks and other vouchers relating to the plaintiff's account, and that the $500 bond was with the other papers, and that he passed the bond to the plaintiff who, after inquiring of him what it was and how it came there, passed it back to him.

The question of fact presented to the jury concerning the $500 item was, whether the plaintiff authorized the appropriation of $500 of his deposit to the purchase of the bond, and the burden was on the defendant to prove that fact.

Silas H. Duncan now resides in Seattle, Washington, and he was not present at the trial, but a statement of what the plaintiff admitted he would testify to if present was read to the jury, in which it was stated that he would testify if present that he called the plaintiff's attention to the $2,500 note and the $500 bond and suggested to him that they would prove a good investment, yielding a good rate of interest, and that the plaintiff agreed to buy both the note and bond and authorized him to charge his account with the amount necessary for the purpose which he did, and that after the transaction the matter was talked over between them, and that the plaintiff saw and handled the note and bond. In rebuttal the plaintiff called several witnesses who gave testimony tending to impeach the credibility of Silas H. Duncan.

The plaintiff testified that he did not authorize Silas H. Duncan to sign his name to the $500 check, that he did not purchase the bond or give any one authority to purchase it for him, and that he never saw the bond or heard it spoken of until Mr. Low of the First National passed it to him in that bank with some of his cancelled checks and other memoranda relating to his account as kept by the Marine Bank.

The defendant urged in support of its contention the circumstances, that on March 13, 1906 the plaintiff's account was overdrawn $902.11 according to the books of the bank and that, at the request of the cashier, he gave his note for $1500, the proceeds

of which were placed to his credit; that in December following his account was again much overdrawn and he gave another note for $1,500, the proceeds of which were credited to his account. And the bank contended that the plaintiff used the $2500 note and the bond as collateral security for the $1500 notes.

On the other hand the plaintiff contended that he then told the cashier that he did not understand how his account could be overdrawn, or why he should be asked to give a note to the bank when the bank was indebted to him, and that the cashier told him it would be inconvenient for the bank at that time to call in the $3000 of the plaintiff's deposit which the bank had used, and that it could make no financial difference to him if he gave the note, as the bank would allow him the same rate of interest on his call deposit as he would pay on the note, and that he gave the $1500 notes relying upon that explanation and because he then had implicit confidence in the cashier. He admitted that he signed his name on the back of the $2500 Hyde note, claiming that he did so at the time he gave the first $1500 note, and saying that the cashier called him back into the bank to do that, but he denied that he then knew that he had any ownership or interest in the $2500 note, and supposed he was asked to indorse it to assist the bank so it would not be obliged to call in his call deposit as the cashier had explained to him.

Much evidence was introduced, on the one side and on the other, bearing upon this issue, but it is impracticable to attempt here any extended reference or detailed analysis of it. The direct evidence was conflicting, and there were other facts and circumstances shown which the parties claimed tended to support their respective contentions. The issue was clearly presented to the jury by the presiding Justice in these words: "Did he authorize the appropriation of that money which the bank owed him to be expended for this $500 Monson bond? If he did authorize the bank or its officials to appropriate his money to the purchase of that bond, why then that is the end of his case, as far as the bond is concerned. On the other hand, if he did not authorize the appropriation of his money to the purchase of that bond then this bank is responsible for it and is responsible for it today, because there is no claim that

that amount of money was appropriated upon the plaintiff's order except for the purchase of this Monson bond and that is the issue. That is purely a question of fact for you to determine upon all the evidence in this case."

The jury found that issue of fact in the plaintiff's favor, and we are not persuaded by a study and consideration of all the evidence that their finding on that issue ought to be set aside as manifestly wrong. They saw the witnesses as they testified and had a better opportunity to judge of their credibility than this court now has.

2. The item of $101.25.

August 31, 1907, the plaintiff, who was then engaged in building a vessel, borrowed of the defendant bank $2200 and gave his note on two months therefor. His account was credited on that day with the proceeds of the note discounted at 6%. But it appears that on September 3, 1907, his account was charged with $3.70, it being the difference between the proceeds of the $2200 note discounted at 7% instead of 6%. When that note matured, October 31, 1907, a new note for $2200 was given on four months on which appears written "with int. after at 7%." November 13, 1907, the plaintiff borrowed of the bank $1300 more and gave his note for that amount on four months on which appears written "with int. after at 7%." On the same day, November 13, 1907, a mortgage of certain vessel property was given by the plaintiff to the bank to secure the two notes, that of October 31, for $2200 and that of November 13, for $1300. This mortgage was written by George H. Clark, an insurance agent, now deceased. After the description of the notes in the mortgage there is written "both notes 'with interest after at 7%.'" On November 14, 1907, the plaintiff's account in the bank was credited with $1218.34 which appears to be the amount of the $1300 note less the discount on both notes at 7% for four months, the time on which each was written. On the back of each note there appears indorsed at regular intervals of four months, down to 1910, payments of interest at 7%, and, so far as we have been able to determine, corresponding charges of interest were made against the plaintiff's account in the bank.

The plaintiff claimed that he should have been charged with only

6% interest on this loan of $3500, and the item of $101.25 is the difference between the charges made against his account for interest on these notes, and what it would have been at 6%.

It was the plaintiff's contention that these notes were altered after he signed them, and manifestly the jury so found. We do not think that finding is reasonably justified by the evidence.

The plaintiff's testimony relating to this matter was not positive and certain. He could only testify that he did not remember that anything was said about 7% interest when the notes were made, and that he did not believe that the words relating to the interest were written on the notes when he signed them, and on cross examination, being questioned with reference to the notes being changed after he signed them by adding the clause "with int. after at 7%," he testified: "Q. Would you swear positively that that was not on there at the time you signed it? A. I would not. I don't believe it was. Q. But you wouldn't swear positively that it wasn't? A. I wouldn't want to, no."

The evidence justifies the conclusion, we think, that in the summer of 1907 the plaintiff required a loan of $3500 and arranged for the same with the defendant bank; that the loan was to be secured by a mortgage of certain vessel property, but the execution of the mortgage was necessarily delayed on account of the registration of some of the vessels; that the $2200 note, dated August 31, 1907, on two months, was taken temporarily until the mortgage security could be given, which was done later, on November 13, 1907, when the $1300 note was given for the balance of the loan, and a new $2200 note was given bearing date October 31, 1907, the date of the maturity of the first note for that amount. Horatio A. Duncan, the president of the defendant bank at the time of the transaction, testified that the rate of interest on the loan at 7% was agreed upon when the first note of $2200 on two months was taken, but that by an error of the bank officials only 6% discount was charged on the books in the first instance, which error, however, was corrected three days after, on September 3, 1907, and the difference charged to the plaintiff's account; that the notes in question were filled out by him on printed blank notes, and that the clauses "with int. after

at 7%" were written by him in both notes before they were signed, and that no change had been made in the notes since they were signed.  He further testified that the mortgage was written by Mr. Clark, with whose handwriting he was familiar, and that the clause in the mortgage relating to the interest on the notes is in Mr. Clark's handwriting and was in the mortgage when it was first delivered to the bank.  But the plaintiff contended that an inspection of the notes and mortgage disclosed some evidence in support of his contention that the interest clauses in question were not written into the notes and mortgage at the same time the rest of the notes and mortgage was written.  And the defendant called one witness who gave it as his opinion, from an inspection of the notes and mortgage, that the clauses in question were written into the notes after they were signed.  The jury had the original notes and mortgage for their inspection, and we have examined them with care.  While it is possible, perhaps, to discern from an inspection of the mortgage a slight difference between the quantity or shade of the ink in the writing of the clause relating to the interest and the other writing, yet that difference, if any, is extremely slight, and all the writing we think was manifestly done by the same person.  And from an inspection of the notes we fail to discern anything that sufficiently indicates that the words relating to the interest were written after the notes were signed.  Further, the improbability that these notes were altered by the bank officials after they were signed is an important consideration.  It is quite impossible to believe that an intelligent person would wrongfully alter a note after it was signed, thereby committing forgery under the statute, for no other motive than that a bank should get the benefit of an increase of 1% in the rate of interest on a comparatively small loan for a short time.

After a careful and painstaking examination of all the evidence relating to this issue, especially, the fact that the plaintiff himself was unwilling to state positively that the interest clauses were not in the notes when he signed them, the positive testimony of the president of the bank who wrote the notes that he wrote the interest clauses into them before they were signed, the absence of any substantial evidence from an inspection of the notes that they have

been altered since they were signed, and the improbability that any intelligent person would make such an alteration on a note after it had been signed by the maker, we are constrained to the opinion that the jury's finding on this issue was against the weight of the evidence.

It may be that the other issue relating to the item of $500 so engrossed the consideration of the jury that they failed to give discriminating consideration to the evidence bearing on this issue. But whatever may have been the cause for it, the court is of the opinion that the finding of the jury on this issue was unmistakably wrong and that it ought to be set aside.

The Exceptions.

In the reply to the plaintiff's brief the defendant's learned counsel says: "As to the exceptions, we will say that the only one of the exceptions to which any attention was devoted in our brief, was the exception to the exclusion of the testimony of George W. Johnson. This is the one to which the plaintiff does not seem to refer in his brief but is the one on which we rely."

George W. Johnson, Treasurer of the Monson Consolidated Slate Company from 1896 until it went into a receiver's hands in 1910, as a witness for the defendant, testified that the bond issue, of which the $500 bond in question was a part, was $50,000, of which $20,000 were issued, and that the bonds were secured by a mortgage of property which he said "cost about $200,000 at that time." He was then asked this question: "Could it have been sold for enough, in your opinion, even at forced sale, to have paid the bonds in full?" and his answer was excluded, to which ruling the defendant excepted.

We think the ruling was right. The fact sought to be elicited by the question was immaterial. The issue was whether or not the plaintiff purchased the $500 bond of Silas H. Duncan and authorized the appropriation of $500 of his deposit in the defendant bank for that purpose. The opinion of the treasurer of the Slate Company as to what the property securing the bonds would sell for at a forced sale could not be material to that issue. As bearing upon the probability that the plaintiff did or did not purchase the bond his knowledge of the value of the bond at the time of the alleged

purchase, or facts relating thereto then brought to his attention, might have been competent. But there was no such evidence offered. The court, however, did allow witnesses to be inquired of relative to the market value of the bonds. This was as far, we think, as the court was permitted to go in admitting testimony in relation to the value of the bonds.

It is therefore the opinion of the court that there was no reversible error in the ruling complained of.

We do not understand that the other exceptions are urged, but we have considered them and do not find the rulings complained of exceptionable.

In accordance with the foregoing opinion of the court the entry in this case must be,

> *Exceptions overruled. Motion sustained unless plaintiff files remittitur for all of the verdict over $500 within thirty days after the rescript is filed.*